Go ahead. Thank you, Honor, and may it please the Court. The Tafton Board made two errors in finding absence of a motivation to combine. Each is an independent basis to reverse-evacuate the Board's incorrect finding of non-artisans. First, the Board erroneously concluded that a skilled artisan would not combine the cork reference with Swanson's disclosure of ferrite unidirectional fibers as an alternative to counsel. Second. Counsel, this is Judge Wallet. On page 21 of the Blue Brief, Ciena asserts without any supporting citation that the use of separate unidirectional fibers for bidirectional communication was a well-known alternative to the use of a single directional fiber like that described in the report. Where does cork provide support for this assertion? Your Honor, you're referring to-on page 21 was a summary of the argument, so we did not place the record citations there, but they would be in the remainder of our Blue Brief. But in response to your specific question, cork itself describes alternative implementations of a system that used ferrite unidirectional fibers, and the best example is Figure 1, which is on Appendix Page 1286. On page 29 of the Blue Brief, Ciena cites Fulton and contends that the decision is particularly instructive. How does Fulton help Ciena establish legal error in the PTAB's factual findings or conclusion of non-obviousness? Your Honor, what Fulton teaches is that-and this is a teaching that we submit was reaffirmed by this court recently, in Uber Technologies versus X1. Fulton teaches that where there is an easily identified alternative that is known in the prior art, and when the first reference teaches everything but that alternative, there is a motivation-there would be a motivation to combine the first reference with a finite known alternative. And, Your Honor, in Uber Technologies, this court really made it clear, because there the court was faced with a prior art that revealed two known methods of transmitting location information to a mobile device. And the court explained that these methods represented a finite number of identified predictable solutions, and a person of ordinary skill would have faced a simple design choice. And in that situation, the differences between those solutions, where the novelty of the patent is not related to the-to those differences, as it is not related here, those differences between the two solutions would be insufficient-would be sufficient-would be not sufficient to reject a finding of motivation to combine. Mr. Timofeyev, this is Judge Chen. How would we reconcile cases like Uber with another line of cases like MediChem, Winner, and Henny Penny, which talk about tradeoffs with respect to different potential choices to make? And-and so, therefore, if-if there's some real disadvantages, it can all of a sudden become a fact question as to whether to modify the primary reference to incorporate something from a secondary reference that could be regarded as an alternative, but at the same time, something that's not desirable or not as desirable for various performance reasons. Your Honor, we're not-we're not challenging the line of cases like MediChem or like Alida Recting, but we think the way that Uber technology, in this case, can be reconciled is, in this case, there are-there are two-two exactly known alternatives, and even the patent itself treats those types of fibers as interchangeable alternatives. And we think the reason that the board here made an error is because it insisted that one alternative would be the preferred alternative. So, we-we admit that the board can weigh the but that is not what the board did here. The board- Well, let me-let me explain how I understand what the board did. What the board found was that Cork talks about certain advantages of having a bidirectional fiber, and-and the board relied on Dr. Goossen for this, about how you can detect any problems with it being less expensive to go with a single bidirectional fiber than two unidirectional fibers. So, the board made these findings as to advantages of keeping Cork as is, just using a single bidirectional fiber, rather than borrowing from the secondary reference, I believe it's Swanson, which alternatively talks about the idea of using two fibers. And so, then that goes right into the heart of these cases like Medi-Chem, Winner, Henny Penny, which talks about when you can delineate between possible alternatives, advantages, and disadvantages. And you see that there are disadvantages from dislodging from the primary reference a particular element and replacing it with some secondary reference element. Then, there can be a fact finding that there isn't a motivation to go ahead and do that replacement. And that's what the board did here. And so, therefore, a case like Uber, which as I understand it, there was no argument at all as to whether or not either of the design choices was better or worse than the other possibility. And so, therefore, what you were dealing with in Uber was two true interchangeable equivalents. Then, therefore, what we've got here is just a simple fact question as to the board's findings that, well, going with two unidirectional fibers is just not desirable. You would keep Cork as is using a single bidirectional fiber. So, where in that explanation of how I understand the board's decision, does the board's reasoning break down in such a way that it committed legal error? Ioana, we think that the board made legal error because once it identified the certain disadvantages to the substitution of unidirectional fibers, it then effectively discounted the combined alternative which uses those fibers. And in doing so, the board actually limited the teaching of Cork to just the monitoring of the fiber quality. Whereas Cork is broad. Cork actually teaches, which I think Hansel and Nepraeus mentioned, Cork also teaches with monitoring and protection and the ability to switch from one fiber to a second redundant fiber. So, what the board did is, in our view, the board set up a very high standard and then it elevated the disadvantages and it also discounted the advantages because we submitted evidence that the event of EDSA, which was becoming an alternative to combine the teaching of Swanson and use the unilateral fibers with Cork. Right. And the EDSA point that you made, you made it for the first time in the reply, right? This is the argument you made that the board found was waived because it wasn't presented as a motivation theory in the petition. Is that correct? Ioana, we did. I know that the board viewed it as late. We responded not to a brief on page 34. We explained that the argument was fully responsive to Oyster's attack on challenge to Dr. McFarland's testimony and Oyster's challenge was on appendix page 224 and 225. And so, we argued there was no waiver. Oyster itself really does not press waiver on this appeal, as you can see in the red brief. On page 52, they referred to the fact that the board addressed on the merits. If I may, I see that my time is elapsing. I would like also to address the second grounds, which is combination of Turing and DeSalvo. But of course, I would be happy to answer any questions about the core grounds as well. So, with respect to choice of Turing and DeSalvo, the board made two erroneous findings. The board first impermissibly limited DeSalvo's teaching to one of its claims embodiments, where the board held that DeSalvo teaches placing the ED5 preamplifier before the multiplexer. And that was a legal error, because DeSalvo's teachings are not so limited. DeSalvo teaches that the multiplexing process weakens the optical signal, and the solution is to incorporate an EDSA preamplifier, which will overcome those losses, filter out the noise, and boost the signal. But that teaching does not depend on the location of the preamplifier vis-a-vis the multiplexer. And our expert, Dr. McFarland, testified that, in fact, you may want to place the EDSA repeater further down the transmission line, because the initial preamplifier may not remedy those transmission losses at the core down speed. So, let me see if I understand your argument. DeSalvo's preamplifier is located before DeSalvo's multiplexer. Is that right? That is the position that's disclosed in the embodiments. But DeSalvo itself never teaches that you must locate the preamplifier before the multiplexer. Okay. And then you're saying, well, your expert explains that you could just pop the preamplifier over onto the other side, and it would end up on Choi's LRC card, right? That is correct, Your Honor. And then the problem is this duplication concern. Right. That was the Board's reasoning. That was the reason, the sole reason that the Board rejected our argument and our evidence. And then to what extent did Sienna ever respond to that duplication concern? Your Honor, we did. And we actually responded. This was both-Mr. McFarland responded to that. This is in his declaration on appendix pages 869, 817. And that must be combined, which is the central point of respect to Choi and DeSalvo. It must be combined, viewed in light of DeSalvo's figure one, which is on appendix page 1304. Because figure one actually shows the inline EDF repeater, which is the multiplexer. And from there, the still-multiplex signal goes to the star coupler, from which it goes to signal branches, which are OM1, OM2, and so on. And each of those branches contains its own receiver unit. And that receiver unit is number 21 on figure one. And each of those receiver units actually includes a separate preamplifier, which is the low-noise EDFA number 22. So the duplication that Dr. Goossen testified to and that the Board accepted as the reason for rejecting our testimony is expressly shown and taught in DeSalvo itself. Did you argue this notion that there's a preamplifier on the receiver card below? If you could just give me a cite to somewhere in your IPR reply where it says, hey, there's a preamplifier in the receiver unit. That's what DeSalvo says. Yes, Your Honor. The best answer is to this argument, and we argue that you can place the preamplifier anywhere, including on the receiver unit. No, no. Where did you say that there is already a preamplifier in DeSalvo's receiver unit? Where did you say that in your IPR reply? Your Honor, the best citations would be our reply, which is Appendix Pages 476, and also the subsequent two pages, 477 and 78. I would also refer to Mr. McCormick. The A476 to A478 is going to show me that? They will show that we argue that you can place the preamplifier anywhere, and it doesn't have to be placed before the multiplexer. Okay, but I just want to be clear about something. If I read A476-78 in response to my question as whether these pages state that DeSalvo already discloses that there is a preamplifier located on its receiver unit, am I going to see that on those pages or not? Yes or no? Your Honor, I want to be very careful in response to your answer, because the... It's a simple yes or no question. Am I going to see that statement here in your IPR reply at A476-78? Your Honor... Yes or no? On those pages combined with Figure 1 of DeSalvo, I believe that those do actually show that point. Where? And also, I think that would be shown in Dr. McCormick's test declaration on page Appendix 949. No, no. I'm asking about your IPR reply. Your Honor, I believe... I'm trying to figure out whether this is a preserved argument. So, I'm looking for a sentence in your IPR reply. Your Honor, I'm turning to those pages now. You're running up on your 15 minutes, by the way. Your Honor, I believe that we have... Those pages are best support where we argued that, because we made the point that the preamplifier can be located anywhere. It does not have to be placed on the multiplexer. And that's a combined... That's a different point than the point you're trying to make to me now, that you argued below that DeSalvo already teaches that there is a preamplifier located on its receiver unit. Your Honor, I believe that point is made there, and also on page 949, which was... Where? It's page Appendix 949, which is Mr. McFarland's demonstrated... No, no, no. Your IPR reply. Your Honor, I believe that the best support you would have is those pages I have cited. Okay. All right. On your reply, you can tell me exactly which sentence is your best sentence for that. Hey, you've used up all your time for your reply, counsel. I'm going to let you have a minute, since you reserved three. Go ahead, opposing counsel. Thank you, Your Honor. May it please the court. Your Honor, once again, the board's decision is not infected with legal error. And in fact, Your Honor, this is one instance where this case differs from the prior cases. Here, Siena only disputes the factual findings by the board in its second challenge, based on Choi and DeSalvo. And Siena accepts, as is admitted, the board's factual findings on the Cork and Swanson combination. Now, Your Honor, Oyster reads Uber exactly as Judge Chen recited a few moments ago. Uber does not actually deal with a factual dispute, whether there are two substitutable alternatives. Here, Siena has accepted, as supported by substantial evidence, the board's findings that using a separate unit directional fiber, or actually a set of separate unit directional fibers, in Cork's bidirectional embodiment would have been undesirable. And that finding was supported by the board's extensive reading of Cork, a number of disclosures in Cork that stress the importance of using the received signal on the bidirectional fiber to measure and determine fiber integrity for transmitting on that same fiber. The board also referred to Dr. Gosen's extensive testimony regarding this point. And even at one point looked to Dr. McFarland's admissions during deposition, where he conceded that making the substitution of bidirectional fiber in Cork's bidirectional embodiment, by substituting out separate unit directional fibers, is contrary to Cork's teaching because it would result in, in effect, a completely undetected fiber, which could be damaged separately from one of the other fibers. And I'm happy to go through that litany of logic, if Your Honors would like. But in essence, Your Honor, the board looked to all of that evidence. Cork, Dr. Gosen's person of ordinary skill in the art, would not have made this proposed change in Cork. In effect, under Uber, where there was no evidence of acceptable tradeoffs, or excuse me, acceptable alternatives, here we have a board finding that Sienna now asked this court to jettison under a question of law, rather than giving deference to the board's factual findings, which are, in effect, undisputed. Other cases that are probably more applicable here, as Judge Chen mentioned, are Winner International, which the board specifically cited, and of course Hennepenny as well, where there is a weighing. Now, Your Honor, an important point here, which I think got lost a little bit in opposing counsel's arguments, is despite their reliance on Uber, they still, in their reply brief, in their gray brief, page 10, do seem to be asking this court to weigh benefits versus advantages. This is about two-thirds of the way down in their gray brief, and they state, the proper inquiry the board should have pursued, however, is not whether these known advantages are sufficient to support the proposed motivation to combine. Absent proof of unidirectional fibers as a known viable alternative was already sufficient, they say. They continue, but whether these benefits are outweighed by the alleged disadvantages. We think this sentence points to Sienna's reliance, really, on that weighing test that the board conducted under Winner, that the board, or excuse me, that this court encourages under Hennepenny, Trivascular, and that line of case law. As Judge Chen correctly noted, the reliance on the erbium-doped fiber amplifier as a, what they called a, sort of an industry standard, was an argument that they first raised in their reply. One point to note here, Your Honors, is they still are not arguing to include the EDFA, or the EDFAs, in Cork, and they make that point clear on page 34 of their blue brief. They write, the point is not that a skilled artisan would have wanted to use EDFAs with Cork system. So there they're admitting that there is no argument below to incorporate EDFAs into Cork, and therefore the question is why would a person of ordinary skill in the art make a decision about fibers based on EDFAs when there is no motivation or reason to add those to Cork system. They continue, rather, as EDFAs were becoming the industry standard, and the bidirectional fibers were ill-suited to EDFAs, one of ordinary skill in the art would have been motivated to replace Cork's bidirectional fiber with the alternative arrangement disclosed by Swanson that of paired unidirectional fibers. This sentence really highlights the logical flaw that they've made on EDFAs, even though they've waived it, and that is, if they're not going to incorporate it in Cork, why would a person of ordinary skill in the art make a decision in Cork based on something that isn't there, an EDFA? That simply is illogical and does not support reversal here. Your Honor, regarding the Choi and DiSalvo arguments, the board's finding was, again, supported by substantial evidence. It was clear it was based on the teachings of Choi, DiSalvo, the explanation by Dr. Gosen, who explained both schemes of what they call demultiplexing, and in one reference in the Star Coupler, which includes a bandpass filter in DiSalvo, neither reference teaches applying an EDFA or an amplifier after the demultiplexing occurs. The only argument for that is from Ciena's experts. What Ciena has done here on appeal is they've developed, in effect, a new argument related to the importance of putting an EDFA on a card, and that they're trying to use that as a new factor for weighing the evidence. That was not an argument they made below. Once again, Your Honors, the board's findings were supported by substantial evidence for the arguments that were made to them. There was no legal error, and unless Your Honors have any other questions, I will cede the rest of my time. I don't hear any. Okay. We have one minute for rebuttal. Yes, Your Honor. Let me just start with the citation, because in response to your other question, so, you know, starting with our petition, that's where we repeatedly argued that DiSalvo teaches that the EDFA preamplifier is located on the receiver card. This can be seen on Appendix 101. It can also be seen, you know, detailed explanation of the grounds of unsentimentability. That's in Appendix 139. Turning to the reply, the best sentence I have for Your Honor is Appendix 476, where we said, Oyster's argument ignores Petitioner's explanation of why an amplifier would be useful in the receiver itself, apart from any amplification done on the line before the multiplexing. We cited Dr. McFarland's testimony on paragraphs 93 and 94, and if you want to look at those paragraphs on pages Appendix 869 and 870, it expressly refers to the optical receiver unit, including the EDF preamplifier 22, paragraph 93, and then the chart below shows, in a box, EDF preamplifier in receiver unit. Okay. We have any questions from the other judges? Your time's expired. Thank you, counsel. Thank you, Your Honor. The matter stands admitted. That concludes the arguments. The Honorable Court is adjourned until tomorrow morning at 10 a.m.